JACKSON, *ex dem.* SPRAGUE and OTHERS, *against*
BOWEN. (*a*)

EJECTMENT for a part of lot No. 5, in *Lysander*, tried
at the *Oswego* circuit, in *December*, 1824, before THROOP,
C. Judge.

At the trial, the plaintiff insisted that the defendant
had entered upon the premises in question, under a con-
tract to purchase them of the lessors of the plaintiff.  A
contract of purchase was accordingly given in evidence ;
but the testimony was conflicting upon the question whe-
ther the defendant in fact entered under it ; he insisting
that he entered and held possession under a contract with
one *Camp*, whose claim was adverse to that of the lessors.

The plaintiff then went to his title, and proved letters
patent for lot No. 5 to *Godfrey Byerd*, a soldier, for rev-
olutionary services, which passed the secretary's office
*August 7th*, 1790.   He then proved a conveyance of the
lot in fee from *Byerd* to *Reuben Murray*, dated *June 9th*,
1792, which was duly deposited in the *Albany* clerk's of-
fice  according to the acts of *January 8th* and *March 27th*,
1794.   (1 *R. L.* 209, 11.)   From *Murray* he deduced
title in fee to the lessors of the plaintiff.

The defence was a deed from the soldier to *Edward
Cumpston*, dated the 5th of *November*, 1783.   This deed
conveyed all the soldier's expected bounty lands in fee to
*Cumpston ;* with a power of attorney to *Jeremiah Van
Rensselaer* and *Abraham Ten Eyck*, to convey to *Cumps-
ton* in fee, and a covenant that when a patent should issue
for the soldier's lands, they (his attorneys) should convey
them in fee simple to *Cumpston*.   The defendant then
proved a deed executed by the attorneys, reciting the
power, and dated the 23d of *September*, 1790, from the
soldier to *Cumpston* in fee.   This deed, executed by the
attorneys, was deposited pursuant to the statutes before ci-
ted ; but the deed constituting them attorneys, was not-

*To render the conveyance of a military lot, executed before January 8th, 1794, valid as against a subsequent purchaser; not only the immediate deed must have been deposited, pursuant to the act of 1794, (1 R. L. 209, 211,) but also the power of attorney under which it was executed.*

Jackson
v.
Bowen.

The defendant claimed under the *Cumpston* title; shew-ing several intermediate conveyances of title from him to one *Leffingwell*, with whom *Camp* contracted to pur-chase; and under whom the defendant, as before men-tioned, claimed to have taken possession.

The judge directed the jury to find for the plaintiff, if they believed that the defendant took possession under the lessors; but if they believed that he took possession under *Camp*, and found the deed to *Cumpston* to be genu-ine, they should then bring in their verdict for the defend-ant; it not being necessary that the deed containing the power should be deposited.

Verdict for the defendant.

A case was made; and it was agreed, that it might be turned by either party into a special verdict; and that if this court should be of opinion that the deed to *Cumpston* containing the power, was void as to the deed of *June 9th*, 1792, by reason of not being deposited, that then the judgment should be for the plaintiff.

But if the court should be with the plaintiff on any oth-er ground, a new trial to be granted.

If they should be with the defendant on all the grounds, then judgment to be entered for the defendant.

*J. Platt*, for the plaintiff. The deed from the soldier, containing the power of attorney, not having been depos-ited, was void; and all title derived from it was inopera-tive as against the lessors of the plaintiff, who claimed un-der a subsequent deed from the soldier.

If notice only had been designed by the statute, (1 *R. L.* 209,) a mere registry would have been enough. The legislature had a further object. That was to detect frauds; and they required the original instrument to be de-posited with that view. The mischief could not be reach-ed without this being done. Indeed the detection of frauds was the declared object of the statute.

The deed from the attorneys was an act of supereroga-tion. The whole title depends on the original deed to *Cumpston*. It passed the estate under the statute, (*sess.* 13, *ch.* 59, *s.* 5, 2 *Greenleaf*, 333.) That act was rem-

edial, and should be construed liberally.  The original
deed, then, is not to be regarded as a mere power of at-
torney ; but as a conveyance in itself.   It became valid,
as such, by the act last cited ; and when the act of 1794
passed, requiring the deposit of military deeds, it extend-
ed to the deed containing the power.   In this view, *Jack-
son* v. *Neely*, (10 *John.* 374,) on which the circuit judge
relied, does not dispose of the question.   That was the
case of a naked power.   But how stands the authority of
that case ? *Jackson* v. *Hubbard*, (1 *Caines*, 82,) is direct-
ly opposite in principle.   The former regards the statute
as a mere registering act ; the latter declares its object to
be the detection of frauds and forgeries. *Jackson* v. *Hub-
bard*, was entirely overlooked in *Jackson* v. *Neely* ; al-
though the former was much more fully considered.  Even
a naked power is plainly within the spirit and intention of
the statute.   It is a matter which affects the title ; and
any paper having this effect must be deposited.   *Jackson*
v. *Neely* was virtually overruled by the court of errors in
*Wendell* v. *Wadsworth*, (20 *John.* 659.)

*A. Van Vechten*, contra.   The original deed to *Cump-
ston*, not being able to reach the soldier's land by any de-
finite description, provided for this defect, by a power to
convey when the patent to the *grantor* should be execu-
ted.   The defendant's claim is, therefore, under the sub-
sequent deed, given in virtue of the power.   Whether
the first deed passed the title or not, there is nothing to
prevent the soldier giving a second ; and both are prior
to the deed under which the plaintiff claims ; so that the
only question on the merits is, whether the power should
have been deposited.   A power of attorney is no part of
the conveyance ; but a mere authority to convey.   One
object of the legislature must have been notice.   The
deed of 1790 contains all that is necessary, to enable the
party to look into the power of attorney.   The power
and all the particulars are recited ; and names are given.
*Jackson* v. *Neely* is full to this point.   *Wendell* v. *Wads-
worth* did not mean to overrule *Jackson* v. *Neely*.   So

far from it, this case is not mentioned in *Wendell* v. *Wadsworth*.

*Curia, per* SAVAGE, Ch. Justice. The doctrine that, he who enters under the title of the lessor of the plaintiff, cannot afterwards dispute it, is not controverted in this case ; but the fact is denied, that the defendant did so enter.   The jury, by their verdict, have found that the defendant entered under *Camp*.   On that fact, the evidence was contradictory, and the verdict should not be disturbed in this respect.

The important question is, whether the power of attorney from *Byerd* to *Van Rensselaer* and *Ten Eyck* should have been deposited.

The object of the legislature, in passing the depositing acts, of 1794, as declared in the preamble to the act of *January 8th*, 1794, was, to afford every possible facility to the detection of forgeries.   It was notorious, that many spurious deeds were in circulation, purporting to convey those lands, which were then becoming valuable ; and had been, since the revolutionary war, the subject of much speculation.   To prevent litigation, and to enable claimants not only to know what elder titles were in existence, but to ascertain their genuineness by actual inspection, were the objects of the act.   If I am right in this, it would seem to follow, that a deposit of a deed, executed by power of attorney, without the power of attorney itself, would be insufficient.   One object was, to ascertain the genuineness of the signature of the soldier. How is that accomplished by depositing his signature avowedly written by another ?   As a conveyance, the deed of 1783, is clearly void for not being deposited ; and if, as a power of attorney, it need not be deposited, the object of the legislature is frustrated.   A deed executed under a forged power of attorney, gave as much notice of the claim, as if the power of attorney had been genuine ; and depositing such a deed has the same effect as if supported by a true power.   This construction of the act may be consistent with the idea, that the intention was

merely to give notice ; but totally repugnant to the declared object, which was to detect frauds and forgeries.

When this court was first called upon to give a construction to the depositing acts, in *Jackson* v. *Hubbard*, (1 *Caines' Rep.* 82,) it was expressly declared, that the object of the acts was the prevention of frauds, by facilitating the means of discovering forgeries. And it was then decided, that though a deed was recorded in the secretary's office, and the clerk's office, in *Onondaga* county, if not deposited according to the acts of 1794, it was void and inoperative against a subsequent purchaser. It was remarked, that the examination of a mere record, could not answer the object of the act ; and yet an inspection of a record is quite as useful to ascertain the genuineness of the original, as the examination of a deed by an attorney, to ascertain the genuineness of his power, when that power is not produced. The court there say, " nothing short of an inspection would, in many cases, answer the purpose ;" and it might with equal propriety have been said, *in all cases*, nothing but actual inspection would answer.

The next case is *Jackson* v. *Neely*, (10 *John.* 374,) where this precise question came before the court. They say, however, it is unnecassary to decide, whether the power should have been deposited ; " for admitting it to have been requisite to deposit the letter of attorney with the conveyance ; yet, as the conveyance was duly deposited, and as it recited the letter of attorney by virtue of which the conveyance was made, the subsequent purchaser had notice of the power by means of the recital, and is affected equally as if the power itself had been deposited." This decision was made in *October*, 1813. The case of *Jackson* v. *Hubbard*, decided in *May*, 1803, was not referred to by either the counsel or the court ; and it is manifest that the two cases are at variance with each other ; the one proceeding on the principle that the object of the deposit was to detect frauds and forgeries ; the other, that it was merely to give notice, which a record or registry would have done as well. That the latter was the

UTICA,
Aug. 1826.

Jackson
v.
Bowen.

principle upon which the court acted in *Jackson* v. *Neely*, is manifest from what is said by chancellor *Kent*, in *Wadsworth* v. *Wendell*, (5 *John. Ch. Rep.* 229.) He presided in this court, when *Jackson* v. *Neely* was decided; and acting upon the same principle in *Wadsworth* v. *Wendell*, he says, " the deposit of these conveyances was intended by the legislature to be notice to all subsequent purchasers, of their existence and contents ; and the deposit of them would have been in a degree useless, if it was not intended to operate as notice." He adds, that the deposit was a substitute for registry, and equivalent to recording. This doctrine was overruled by the unanimous opinion of the court for the correction of errors in the same case, when carried up on appeal. *Spencer*, Ch. J. who delivered the only opinion, says, " the construction put upon this statute by the chancellor, is such as was never anticipated by the profession, nor imagined by the legislature ; and with the utmost deference, I must say, that in my judgment, it cannot be supported." He subsequently adds, " when, therefore, the legislature required these unauthenticated, unacknowledged, unproved and unrecorded deeds, to be deposited by a fixed day ; and declared that if they were not thus deposited, they should be adjudged fraudulent and void against subsequent purchasers for valuable consideration, they could not have intended to give greater effect to them, than they had before," &c. or to require subsequent purchasers to take notice of them.

This case is no otherwise applicable here, than as it decides expressly, that the object of the legislature was not to make the deposit a notice to subsequent purchasers ; but merely to enable those interested, to prevent frauds and detect forgeries.

Such being the object, as declared by the legislature, and adjudicated by our highest court, the case of *Jackson* v. *Neely* is virtually overruled.

The object of the depositing acts, then, being an inspection of the original deeds and signatures, of those who had drawn these lands, and of whose signatures it was alleged there were many forgeries, the depositing of the

deed executed by attorney, was not a compliance with the act. The power of attorney being void by force of the acts of **1794,** the deed founded upon it falls; and with it, all pretence of title in the defendaut, or out of the lessors. They are, therefore, entitled to judgment.

<div align="right">

UTICA,
Aug. 1826.

</div>

<div align="center">

Judgment for the plaintiff.