CALEB O. DAUGHADAY, Plaintiff in Error, against JOSEPH A. PAINE, et al., Defendants in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

A vendor taking security upon the land sold, does not, by that act, waive his equitable lien, provided he has expressly agreed with the purchaser that it shall be retained. Where such agreement has been made, the lien will attach to the property in the hands of the vendee, and all persons claiming under him with notice of the agreement.

The owner in fee of land, in conveying the same by deed, may limit or restrict the estate granted in any manner he chooses, (not repugnant to the grant intended) and the grantee will take only the estate as limited.

Whenever the instruments forming the purchaser's chain of title, disclose an incumbrance, he is equally bound by such notice, as by the record of the instrument itself, creating or evidencing the incumbrance, or actual notice of the same, as in case of vendor's lien without mortgage.

A purchaser who relies upon an *abstract of title*, which does not exhibit the contents of the conveyances forming the chain of title, will be deemed guilty of *crassa negligentia* and the fact that such is the usual custom of the country in the transfer of real estate, raises no equity in his favor.

The facts found by the Court below are briefly as follows:
The Plaintiff in Error being the owner of lots two and three in block one of Patterson's Addition to Saint Paul, and being desirous of making an advancement to his daughter, Mary E. Goodrich, of all the said lots were worth over $1,000, conveyed the same to his daughter, Sarah E. Daughaday, then residing with him in the State of New York, on the 30th of December, 1854, and took back a mortgage from said Sarah E., on the same property, of the same date as the said first conveyance, to secure the sum of $1,000, with interest, and said Sarah E., at the same time, conveyed said property to her sister, Mary E. Goodrich, who was then in Saint Paul, the

said deed containing a recital of the mortgage to Plaintiff, and being subject thereto.

The deed from Plaintiff in Error to said Sarah E., and the deed from Sarah E., to Mary E., were delivered to James D. Goodrich, husband of said Mary E., and by him taken to Ramsey county, Minnesota, in which said lots are situated, and were recorded in the office of Register of Deeds of said county, on the 11th of January, 1855. The mortgage above mentioned was forwarded to Ramsey county, for record, three or four days after its execution, and was recorded on the 26th of January, 1855, and did not come into the possession of the Register of Deeds until that time.

That said deed to Sarah E. was executed without the request or knowledge of the said Mary E., and that she made no promise to pay the said $1,000 ; that said mortgage was not made with the knowledge or assent of said Mary E., nor has she, at any time, assumed, or promised to assume, the payment of the sum therein specified.

That on the 22d of January, 1855, said Mary E., and James D. Goodrich, her husband, made, executed, acknowledged and delivered to one Abram Bennett, a mortgage upon said lots, to secure the payment of a note of that date, for $930, signed by James D. Goodrich, as set forth in the complaint.

That at the time of taking said mortgage, and up to the time of the commencement of this suit, the said Bennett had no actual knowledge or notice of the execution or existence of the mortgage from Sarah E. Daughaday to the Plaintiff, or of the recital or mention of said mortgage in the deed from said Sarah E. to the said Mary E., but took the same in good faith, believing it to be a first lien on said premises.

That said mortgage to Bennett was duly recorded in the office of the Register of Deeds of said Ramsey county, on the 22d of January, 1855.

That on the 11th of October, 1855, said Bennett, for a valuable consideratien, duly assigned and transferred said mortgage and note to Isaac Van Etten and Michael E. Ames, and that neither at the time of said assignment, nor until the commencement of this action, had said Van Etten or said Ames any actual knowledge or notice of the execution or existence

of said Plaintiff's mortgage, or of the recital or mention of the same in the deed from said Sarah E. to said Mary E.; that said Ames and Van Etten did not, nor either of them, examine the records of said Register's office, but relied upon an abstract of title to said lots, which abstract did not exhibit the contents of the conveyances in the chain of title to said premises.

That on the 22d of September, 1856, Ames and Van Etten, for a valuable consideration, duly sold, assigned and transferred said mortgage and note to Joseph A. Paine, Defendant in Error, and that neither at the time of said assignment, nor until the commencement of this action, had the said Paine any actual knowledge or notice of the execution or existence of Plaintiff's mortgage, nor of the recital or mention of the same in the deed from Sarah E. to Mary E.

That said Defendant's mortgage was duly foreclosed, and said lots purchased by him upon said foreclosure, on the 26th of November, 1857, and that he thereafter received a Sheriff's deed therefor according to law.

And the Court finds, as conclusions of law applicable to the foregoing facts : That the record of said deed from Sarah E. to Mary E., is not constructive notice of the recital therein of said mortgage to the Plaintiff, so as to charge said Bennett, Ames and Van Etten, and the Defendant Paine, with knowledge of the existence of said mortgage, or to put them on inquiry concerning the same.

That the Defendant's mortgage is the prior lien on said premises, and that Plaintiff is not entitled to the relief demanded in his complaint, and the action is ordered to be dismissed.

Thereupon a judgment of dismissal was entered, and the same is now brought by writ of Error to this Court for review.

Points and Authorities of Plaintiff in Error.

I.—The conveyance to Mrs. Goodrich was a conditional conveyance, and the grant was subject to the condition of defeasance in the mortgage, and subject to be defeated there-

by. The condition having been broken, the legal title is divested, leaving in the assignee of Mary E. Goodrich the equitable right only of redemption. Therefore the question of notice is not material.

II.—The recitals in the deeds, directly in the chain of title under which Defendant claims, are notice of the facts and matters recited, no matter in what part of the deed the recital appears. Whatever appears upon the title possesses and forms an integral part of the title itself. *Hall vs. Haythorp,* 3 *Bland.* 531; *Haythorp vs. Hooks' Admr.* 1*st Gill & J.,* 270; *Oliver vs. Pratt,* 3 *Howard,* 333; *Mason vs. Fagan, Walkers Ch.* 259; *Johnson vs. Gwathey,* 14 *Little,* 317; 3 *Iredell,* 535, 7 *Conn.* 324; *Heenan vs. Blackwell,* 6 *B. Monroe,* 67; 7 *B. Monroe,* 312; 10 *Smedes vs. Marsh,* 312 *and* 143, 7 *B. Monroe,* 116; *Walker's Chancery,* 459.

III.—Such notice by recital is of the most conclusive nature, and is unsusceptible of being explained away or rebutted. It is notice by presumption of law and cannot be contradicted. *Adson vs. Allen,* 1 *Yerger,* 360; *Graves vs. Graves,* 1 *A. K. Marshall,* 161; *Morris Ex. v. Blackad,* 6 *B. Monroe,* 67; 1 *Hoffman,* 158; *Fuller vs. Jackson,* 6 *Wendell,* 213; *McKinmun vs. Mail,* 14 *Texas,* 318.

IV.—If a party has notice (constructive), such as is patent in the deeds through which he claims, he is chargeable without a fraudulent omission of duty. In case the party neglects to examine such deeds, such omission cannot be in good·faith, and therefore the party is estopped by the recital. The question is not as to whether the party had actual notice, but whether it is not fraudulent on his part to omit an actual examination of the deed under which he claims title. 31 *Eng. Chancery Law and Equity Reports,* 89, ·*and cases above cited;* 14 *B. Monroe,* 277; *Tieman vs. Thomas,* 14 *Texas,* 318.

V.—The question is not as to whether the vendor has lost his lien, by the taking of the mortgage, for the notice is of the existence of the mortgage, and also that it is for unpaid purchase money ; the deed under which above Defendant Paine claims title being subject to the condition of defeasance, leaves only an equitable title in Defendants, and Plaintiff's equity is superior and coupled with a legal interest.

Points and Authorities of Defendants in Error.

This case presents but two questions for the consideration of the Court, namely :

*First*—Did the mortgage from Goodrich and wife to Bennett obtain priority over the mortgage of the Plaintiff, by being first recorded ?

*Second*—Has it lost that priority by the subsequent recording of Plaintiff's mortgage ?

Considering these questions in the above order, we say in reference to the first of them :

I.—The Plaintiff cannot claim the equitable lien of a vendor for unpaid purchase money.

1. Because there was no agreement or promise by any one to pay the amount which his mortgage was given to secure, and that amount therefore was not unpaid purchase money.

2. If any such lien might have been available in his favor, it was relinquished by his taking a mortgage as security.

3. The lien of a vendor for unpaid purchase money only exists as between vendor and vendee, and purchasers with notice of the same, and does not affect *bona fide* purchasers for a valuable consideration. *Willard's Eq. Jur.*, pp. 441, 443, *and cases cited*; *Bayley vs. Greenleaf*, 7 *Wheat. R.*, 46; *Selby vs. Stanley*, 4 *Minn. R.*, 65; 4 *Kent's Com.*, 153, 154, (*marginal*) *note "a."*

II.—The statute determines this question in the affirmative, if Bennett purchased in good faith and for a valuable consideration. *Revised Stat. of Minn.*, ch. 46, *p.* 213, *sec.* 24; *Comp. Stat. of Minn.*, ch. 35, *p.* 400, *sec.* 24.

The Plaintiff in Error relies, to rebut this good faith, upon the naked fact of the recital in the deed to Mrs. Goodrich ; and in reference to this point we claim,

1. That the Court below having found from the evidence that the mortgage to Bennett was taken by him in good faith, and for a valuable consideration, and was first recorded, the provision of statute above quoted makes the Plaintiff's mortgage void as against Bennett.

As proof of notice would take a subsequent purchaser whose

deed was first recorded out of the benefit of the registry act, so proof of good faith or want of notice brings him within it. *Hine vs. Dodd,* 2 *Atkins' R.,* 275; *Jolland vs. Stanbridge,* 3 *Vesey's R.,* 478; *Wyatt vs. Barnwell,* 19 *Ves. R.,* 435; *Day vs. Dunham,* 15 *Johns. R.,* 555; *Johnson vs. Reardon,* 3 *Md. Ch. Decisions,* 357; *The U. S. Ins. Co. vs. Shriver et als.,* 3 *Md. Ch. Decisions,* 381.

2. The record of Plaintiff's mortgage and that alone under our statute could be constructive notice of such mortgage.

To make the casual recital in the deed to Mrs. Goodrich constructive notice to defeat Bennett's mortgage, would render the recording of Plaintiff's mortgage entirely useless for any purpose whatever, and would be breaking in upon the letter and spirit of the registry act and opening the door to that fraud and uncertainty which it is the special office of that act to guard against and defeat.

Our statute provides for recording deeds and mortgages in different books, and for keeping separate books of index. *Rev. Stat. of Minn., p.* 63, *sec.* 5, *amended by Sess. Laws of* 1854, *p.* 61, *sec.* 4; *Comp. Stat. of Minn., p.* 157, *sec.* 5.

On these points we refer to 4 *Kent's Com.,* 169, 173, (*marginal*); *Willard's Eq. Jur.,* 254; *Dart's Vendors & Purchasers,* 402; *White vs. Moore,* 1 *Paige Ch. R.,* 551; *Grimstone vs. Carter,* 3 *ib.,* 421; *Hodgson vs. Dean,* 1 *Eng. Ch. R.,* (2 *Simon & Stuart,*) 220; *Jackson vs. Van Valkenburgh,* 8 *Cow. R.,* 260; *McMechan vs. Griffin,* 3 *Pick. R.,* 149; *Bush vs. Golden,* 17 *Conn. R.,* 594; *Jackson vs. Elston,* 12 *Johns. R.,* 452; *Jackson vs. Given,* 8 *ib.,* 137; *Johnson vs. Reardon,* 3 *Md. Ch. Decisions,* 357; *The U. S. Ins. Co. vs. Shriver, ib.,* 381; *Carr vs. Calleghan,* 3 *Litt.,* (*Ky.*) 365.

In both of these Maryland cases, as well as in many of the others, it is distinctly held that a subsequent purchaser cannot be affected by a prior unregistered deed, except on proof of such actual notice as would amount to fraud.

3. Even were the recital in the deed held to be presumptive evidence of notice, that presumption falls before the affirmative proof, admissions and finding of the Court, to the full effect that Bennett had no notice or intimation of such recital, or of the existence or execution of the prior mortgage.

And when the good faith of a purchaser is the only question for consideration, and that is affirmatively proved and admitted, how can it be urged that the reverse of this, namely, bad faith or fraud, exists at the same time? A court of equity will not exert its ingenuity to charge a party with fraud by any legal fiction or technical hindrance to the real truth, where that truth clearly establishes his actual good faith.

4. Should it be held that Bennett was bound to take notice of the deed to Mrs. Goodrich, this could only extend to the deed proper and not to the recital of collateral matters. This recital is no part of the deed; it is not a description or adjunct of the grantor, grantee, or thing granted. It is a matter solely between Sarah E. Daughaday and Mrs. Goodrich; a parenthesis inserted for the purpose of saving the former from her covenants against incumbrances: the title to the land passed the same as though the deed had contained no such recital. As between the immediate parties to the deed the recital had the effect of placing Mrs. Goodrich in the precise position of her grantor, and she held the land subject to the mortgage, but this lien became subjected to that of Bennett the moment he became a purchaser for a valuable consideration, without notice, and placed his conveyance on record. The first point made by the counsel for Plaintiff in Error can need no other answer than is above suggested. *Willard's Eq. Jur.*, p. 256; *Dey vs. Dunham*, 2 *John. Ch. R.*, 182; *Jackson vs. Burgott*, 10 *John. R.*, 457, (*Kent, Ch. J.*); 4 *Kent's Com.*, pp. 169, 170-71-72 (*marginal*).

II.—The second question which we proposed to discuss, is whether the mortgage of Bennett lost its priority by the subsequent record of Plaintiff's mortgage, but as the counsel for the Plaintiff do not raise this point, nor rely upon it, we shall simply cite a few of the numerous authorities bearing on this question; and we believe there are no contrary ones.

It is admitted and found by the Court below that the assignees of the Bennett mortgage purchased the same for a valuable consideration and without actual notice of Plaintiff's mortgage, or of the recital in the deed to Mrs. Goodrich, and therefore such assignment carried with it all the rights of Bennett, and could not be affected by the recording of Plain-

vol vi.—57

tiff's mortgage subsequent to Bennett's purchase. *Connecticut vs. Bradish,* 14 *Mass.,* 296; *Trull vs. Bigelow,* 16 *ib.,* 406; *Boynton vs. Rees,* 8 *Pick.,* 329; *Tresscott vs. King,* 6 *Barb. S. C. R.,* 346; *Hooker vs. Pierce,* 2 *Hill,* 650; *Jackson vs. McChesney,* 7 *Cow.,* 360; *Jackson vs. Van Valkenburgh,* 8 *ib.,* 260; *Mallory vs. Stodder,* 6 *Ala.,* 801; *Wood vs. Chapin,* 3 *Kernan,* 509; *Varrick vs. Briggs,* 6 *Paige,* 328; *Willard's Eq. Jur.,* 249; *Jackson vs. Given,* 8 *Johns.,* 137.

SMITH & GILMAN, Counsel for Plaintiff in Error.

BOND & CLARK, Counsel for Defendants in Error.

*By the Court*—ATWATER, J.—In *Selby vs. Stanley et als.,* 4 *Minn.,* 65, this Court recognized the doctrine of the vendor's lien for the purchase money under certain limitations, and laid down the following as the correct rule on this subject, viz. , "that whenever the vendor shall take any security for the purchase money upon the land sold, or upon any other land, or by pledge of chattels, or by the absolute or conditional obligation of a third person, or any other security than the personal obligation or promise of the vendee, such fact shall be deemed conclusive of his intention to abandon his equitable lien, unless he retain it by express agreement." A vendor taking security upon the land sold, does not, therefore, by that act, waive his equitable lien, provided he has expressly agreed with the purchaser that it shall be retained. Where such agreement has been made, the lien will attach to the property in the hands of the vendee, and all persons claiming under him, with notice of the agreement. The facts found by the Court below show that it was expressly agreed by and between the Plaintiff in Error, and Sarah E. Daughaday, to whom he conveyed the premises, that the amount of $1000 should be and remain a lien on the premises for that amount of purchase money, and that it was not intended to waive the same by taking the mortgage. As between the Plaintiff in Error and his vendee, Sarah E. Daughaday, there can be no doubt but that the vendor has retained his lien upon the property, and the only question is whether subsequent purchasers

have had such notice of this lien, that their rights in the premises must be postponed to those of the Plaintiff in Error.

The mortgage from Sarah E. Daughaday to the Plaintiff in Error was not filed for record at the time Goodrich mortgaged to Bennett. But the deed from Sarah E. to Mary E. Goodrich recited this mortgage for the purchase money, or at least the deed in terms was given subject to the mortgage. The Court below held that this reference in the deed to the mortgage of the Plaintiff in Error, was not constructive notice to Bennett and assigns of the existence of that mortgage, and' that consequently the mortgage of the Defendant in Error took precedence of that given for the purchase money as a lien on the premises.

The first question presented on the facts here disclosed is, what estate passed to the grantee of Sarah E. Daughaday under the deed above mentioned ? That deed could convey no greater interest than the grantor herself possessed, which was the legal estate subject to the equitable lien or right of the Plaintiff in Error to the premises, to the extent of one thousand dollars. Mary E. Goodrich therefore did not take the whole legal and equitable interest in the premises, nor did the deed from her grantor purport to convey the entire estate, but expressly excepted from the grant this equitable lien for the purchase money. And the same rule must of course apply to the grantee of Mary E. Goodrich. This principle was recognized in *Greenleaf vs. Edes*, 2 *Minn.*, 264, and we think is applicable to all like cases of the transfer of real estate, where the recording acts have not given rights to subsequent purchasers not actually acquired from the grantor. The owner in fee of land, in conveying the same by deed, may limit or restrict the estate granted, in any manner he chooses (not repugnant to the grant intended), and the grantee will take only the estate as limited.

But although the Plaintiff in Error may have retained a vendor's lien on these lots, he cannot enforce the same as against the mortgage to Bennett, unless the latter has had actual or constructive notice of the same. The Court has found he had no actual notice of the existence of the mortgage in favor of the Plaintiff in Error, and it remains to con-

sider whether the recital of this mortgage in the deed from Sarah E. Daughaday to Mary E. Goodrich was such notice as should postpone the lien of the Respondent's mortgage to that of the Plaintiff in Error. The reference to that mortgage in the deed to Mary E. Goodrich, is as follows, viz. : After the description of the lots, the instrument proceeds': "subject to a certain indenture of mortgage bearing even date herewith, made and executed by the party of the first part hereto, to Caleb O. Daughaday of the said town of Ripley, to secure the payment of the sum of $1000, parcel of the purchase money of the land above described, and interest thereon, payable, the said principal sum at or before the expiration of five years, and the said interest annually from the date of said mortgage," and warranting and defending against all, " except as against said mortgage above referred to." The Court has found as a fact that Bennett " had no actual notice or knowledge of the recital of said mortgage in the deed from said Sarah E. to said Mary E., but took the same in good faith, believing it to be a first lien on said premises." And the ground of the decision of the Court below as we understand it, was not that the recital was not in terms sufficient to give notice of the mortgage, but that the mortgagee was not bound to take notice of the recital in the deed. If he was, then the finding that the mortgage was taken in " good faith," will not aid the Respondent, but he will be equally concluded as if the mortgage itself were on record.

From as careful an examination as I have been able to give to this question, I am of the opinion that a purchaser of real estate is bound by notice of a vendor's lien, disclosed in the instruments forming his chain of title. Looking at the question as an original proposition, aside from authority, it seems contrary to reason and good sense that a party should be excused from knowing the contents, and the whole contents of his title deeds. The purchaser has possession of these title deeds (through the records) to all intents and purposes as fully as if they were delivered into his own hands. The law requires them to be recorded in full, and not merely certain portions, as names of parties, consideration or description. If this statement in the deed of the incumbrance existing on

the premises, had the effect to limit the estate in the hands of
Mary E. Goodrich, so that she could not have held the entire
estate free from the equity of the Plaintiff in Error, then it is
difficult to see how the Defendant in Error stands in any bet-
ter position than she does.   For Bennett and his assigns had
precisely the same notice both in manner and substance that
Mrs. Goodrich had.   It is admitted by the Counsel for the
Defendant in Error, that "as between the immediate parties
to the deed the recital had the effect of placing Mrs. Good-
rich in the precise position of her grantor, and she held the
land subject to the mortgage."   It is true Mrs. G. was not a
purchaser for a valuable consideration, but that is not given
as the reason why she is bound by the recital in the deed, but
because (in the language of counsel,) "this recital is no part
of the deed; it is not a description or adjunct of the grantor,
grantee, or thing granted."   This position we hold not ten-
able, as the recital is in the nature of an exception or limita-
tion of the estate granted.

The point here raised is, not whether the mortgage of Ben-
nett, having been first recorded, takes precedence of the un-
recorded mortgage of Daughaday; for if there were no ques-
tion of notice, there could be no doubt under the statute as to
priority ; but whether the recital in the deed of Mrs. Good-
rich, of the mortgage to Plaintiff in Error, was constructive
notice to Bennett and his assigns.   And upon this point an
examination of several of the authorities cited by the counsel
for the Respondent, shows that they are not applicable.   The
doctrine discussed in 4 *Kent's Com.*, 169, 173, is that of the
effect of prior registry, with or without notice, and not as to
what constitutes notice.   In 4 *Kent's Com.*, 460, it is stated
that "the general rule is, that all parties to a deed are bound
by the recitals therein, and they operate as an estoppel, work-
ing on the interests in the land, if it be a deed of conveyance,
and binding both parties and privies, in blood, in estate, and in
law." And see also 1 *Greenleaf's Ev.*, sec. 23, *and cases cited.*
In the reference to *Dart on Vendors and Purchasers*, 402, it
is stated that "notice of an unregistered security must, in
order to affect a purchaser claiming under a registered instru-
ment, be actual notice affecting him with fraud," but the ques-

tion here is not as to actual but constructive notice from the record, which if it exists is equivalent to actual notice.

In *White vs. Moore*, 1 *Paige Ch. R.* 551, it was held that " a deed absolute on its face, if intended only as a mortgage or security for the payment of money, whether accompanied by written defeasance or not, must be recorded as a mortgage in order to protect the holder against a subsequent *bona fide* mortgagee or purchaser of the premises," a principle which is not here applicable, as it is not contended that the deed to Mrs. Goodrich was intended as a mortgage. The same doctrine is stated in *Grimstone vs. Carter*, 3 *Paige Ch. R.* 421, and in *Willard's Eq. Jur.* 254, *and* 15 *J. R.*, 555; but neither those cases, nor those of *Jackson vs. Elston*, 12 *J. R.*, 452, and *Jackson vs. Given*, 8 *John.* 137, meet the point as to whether a recital in a deed is a notice of an unregistered mortgage.

In *Dart on Vendors and Purchasers*, 407, *et seq.*, numerous cases are cited as to the extent of notice by way of recitals, and some of them go farther than is claimed in this case, in behalf of the Plaintiff in Error. It is there stated that " in all cases where a purchaser cannot make out a title but by a deed which leads him to another fact, whether by description of the parties, recital, or otherwise, he will be deemed conusant thereof; for it was *crassa negligentia* that he sought not after it," citing 2 *Binn.*, 466; 6 *Binn.*, 119. And also, " if a man agrees to purchase under limitations in a deed which makes it necessary upon that transaction, for him to look into that deed, and that deed contains recitals of judgments affecting the lands he had so agreed to purchase, he is bound by those judgments, for he had a right to see the whole deed under which he purchased, and therefore must be taken to have seen the whole, and must consequently be presumed to have taken notice of everything contained in it, affecting his purchase ;" citing *Morris vs. Vanderen*, 1 *Dall. Rep.* 64-67. In *Cuyler vs. Bradt*, 2 *Caines' Cases in Error*, 326, it was held that a conveyance, with a recital of the intent of a purchase, is a conveyance with notice, and the grantee takes, subject to trusts implied as well as expressed." In *Jackson vs. Neely*, 10 *John.*, 374, it was held that " where a deed, reciting a let-

ter of attorney by virtue of which the conveyance was made, was duly deposited with the Clerk of Albany, according to the act of the 8th of January, 1794, it was held to be sufficient notice of the power, by means of the recital, to a subsequent purchaser who was equally affected by it, as if the power itself had been also deposited." It is true that in *Jackson vs. Bowen*, 6 *Cow.* 141, it is stated that the case of *Jackson vs. Neely* is virtually overruled, but not on a ground affecting the question here raised, the Court, in *Jackson vs. Bowen* holding, that the object of the deposit was to detect frauds and forgeries ; whereas in the other case, the Court held the object was merely to give notice, which a record or registry would have done as well ; and where such is the purpose it is not claimed that the decision in *Jackson vs. Neely* is incorrect.

In *Murray vs. Ballou*, 1 *John. Ch. R.* 566, it was held that " a purchaser of A, a trustee, is not chargeable with notice of the trust, by means of the registry of a deed from H to B, reciting that A had never executed a declaration of the trust." It will be observed that the deed containing the recital in that case, was not one in the regular chain of title from the trustee, and had it been, there is a strong intimation that the recital would have been good notice, the Chancellor remarking that " this deed containing this recital was registered on the 9th of April, 1810, but I cannot perceive any justice in obliging Ballou to take notice of the contents of that deed. By what clue was he to be directed to look into the deed from Heatly to Mrs. Green ? He was dealing with Winter, and supposing Winter's trust to be, otherwise, totally unknown to him, he might as well be required to examine the contents of every deed on record. If there had been any deed on record to which Winter was a party, he would have had a specific object and guide for inquiry ; *cocca regens filo vestigia.*" This is hardly less than saying that a purchaser is bound by recitals contained in deeds constituting his chain of title.

In *Spence's Equitable Jurisdiction*, 756, the doctrine is laid down that " a purchaser—and, as before observed, a mortgagee is a purchaser *pro tanto*—who has actual notice of one instrument affecting the estates, has constructive notice of all

other instruments to which an examination of the first could have led him, and if he do not examine into them, his conduct amounts to that degree of negligence which will charge him with all the consequences of notice. In all cases where a person cannot make out a title, but by a deed which leads to another fact, whether by description of the parties, recital, or otherwise, he will be deemed cognizant of it ; for it was *crassa negligentia* that he sought not after it ; and for the same reason, if a purchaser has notice of a deed, he is presumed to have notice of the whole contents of it." The relevancy of this doctrine to the case at bar will be apparent, when it is considered that it is admitted that Bennett had notice of the deed to Mary E. Goodrich, but denies notice of the contents of the same, or at least the recital of the mortgage to the Plaintiff in Error. To the same effect is *Adams' Equity*, 326 ; and in *Coote on Mortgages*, 377, it is also stated that if a party have notice of a deed, he has notice of all its contents. And in *Story's Equity Jur.*, sec. 400, it is stated that " an illustration of this doctrine of constructive notice is where the party has possession or knowledge of a deed under which he claims his title, and it recites another deed which shows a title in some other person, there the Court will presume him to have notice of the contents of the latter deed, and will not permit him to introduce evidence to disprove it." And, generally, it may be stated, as a rule on this subject, that when a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed to have knowledge of that fact. And see *Jackson vs. Hoffman*, 9 *Cow.* 271; *Dunham vs. Dey*, 15 *John.*, 555; 6 *B. Monroe*, 67; *Andrews vs. Wolcott*, 16 *Barb.* 21; 1 *Eden*, 351; 2 *Ves. J.* 457; *Sugden on Vendors and Pur.*, 1056; 2 *Hare*, 261.

The doctrine to be deduced from these authorities seems to be that whenever the instruments forming the purchaser's chain of title disclose an incumbrance, he is equally bound by such notice as by the record of the instrument itself, creating or evidencing the incumbrance, or actual notice of the same as in case of vendor's lien without mortgage. And the doctrine seems not only supported by the weight of authority, and consonant with sound reason and good sense, but a differ-

ent one would be likely to lead to inequitable results.   If this recital may be disregarded, as not being a material part of the deed, (as is claimed), how often would embarrassing questions arise as to the materiality of phrases of limitation or exception in deeds, either as to the effect of the · terms used, or the manner and form in which they are introduced? In *Martin vs. Brown*, 4 *Minn.*, 382, it was held that the fact that a party gave only a quit claim deed, with a nominal consideration of one dollar, for valuable property, was a sufficient circumstance to put a purchaser on inquiry as to the vendor's title.   The consideration and form of the deed were in that case deemed material parts thereof, and though it did not appear that the Defendant had actual notice of these facts, he was held concluded by the record.   And we think the authorities use none too strong an expression in declaring it to be *crassa negligentia*, where a purchaser takes title without an examination of the title deeds relating to the estate.   In the case at bar the deed disclosed the mortgage to all intents and purposes, as fully as the record of the instrument itself could have done, and showed that the mortgage was not due, and no presumption in favor of payment could be entertained. · The exercise of even the most ordinary degree of prudence would have disclosed the lien of the Plaintiff in Error, to Bennett and his assignees.   The Court has found that the assignees of Bennett had no actual notice of the existence of said mortgage to Daughaday, but relied upon an abstract of title to said premises, which did not exhibit the contents of said conveyances in the chain of title to said premises; but this fact does not raise any equities in favor of the respondent calling for the interposition of the Court in his behalf, not even had it further appeared that such is the usual custom of the country, in transfers of real estate.   The gross carelessness which here prevails with reference to such transfers, has become proverbial, and is the fruitful source of litigation, and should be sanctioned by courts of justice no further than may be absolutely required by the true construction of statutes relating thereto.   And instead of encouraging the practice of relying upon abstracts of title, made without reference to the . contents of recorded instruments, (as the counsel seems to

vol vi.—58

think desirable) it should be regarded with extreme disfavor.

Entertaining these views of the effect of the recital of the mortgage to Plaintiff in Error in the deed from Sarah E. to Mary E. Goodrich, it becomes unnecessary to examine the position of the counsel for Defendant in Error, with reference to the recording acts. If this recital be constructive notice of the mortgage, then Bennett and his assigns are not *bona fide* purchasers within the meaning of those acts, and consequently not protected by them, by virtue of a prior record. Those statutes do not purport, or attempt to define what constitutes notice, whether actual or constructive, but leave that question to be determined by the rules of law applicable to the case, independent of the statute.

The judgment below is reversed, and let judgment be entered in accordance with the prayer of the complaint.