# Moses Brothers *v.* Johnson.

*Bill in Equity for Injunction against Waste.*

|  88 | 517 |
| 112 | 114 |
| 112 | 545 |
|  88 | 517 |
| 117 | 394 |

1. *Executory contract of sale, or lease at option of vendor.*—Under an executory contract for the sale of land, the legal title being retained by the vendor, with a stipulation giving him the right, on default in the payment of any installment of the purchase-money, to annul the agreement, and retake possession of the land, a specified sum as rent in the meantime being agreed on; this right of election is reserved for his benefit, and he alone can exercise it.

2. *Same; rights and remedies of parties.*—When the vendor of lands retains the legal title in himself as security for the purchase-money, executing only a bond for title, the relation between him and the purchaser is, in substance, the same as between mortgagee and mortgagor; the same rights and remedies, legal and equitable, and the same limitation to the right of recovery, exist in each case.

3. *Waste by cutting timber; as between mortgagor and mortgagee, and between vendor and purchaser.*—A mortgagor in possession may be enjoined from cutting timber on the land, in the absence of an express stipulation in the mortgage, when the value of the security is thereby impaired, or endangered; and the same principle applies as between vendor and purchaser, when the former has retained the legal title, and has no security but the land.

4. *Same; responsive averments, and new matter in answer, on motion to dissolve injunction.*—When the vendor seeks by bill to enjoin the purchaser under an executory contract from cutting timber on the land, alleging that it is located near a city which furnishes a ready market for fire-wood, that the value of the land is diminished by stripping it of the timber, and that he has no other security for the unpaid purchase-money; an averment in the answer that the land is fertile, and that its value would be increased by clearing it up and reducing it to cultivation, is affirmative matter in avoidance, and can not be considered on motion to dissolve the injunction.

APPEAL from the City Court of Montgomery, in equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 26th August, 1889, by Moses Brothers, suing as partners, against Berry Johnson; and prayed an injunction, to restrain the defendant from cutting timber on a tract of land which the complainants had sold to him, except for repairs, fences, and other necessary purposes. An injunction was granted on the filing of the bill; and after answer filed, the defendant submitted

[Moses Brothers v. Johnson.]

a motion to dissolve it, both for want of equity in the bill, and on the denials of the answer. The court sutained the motion, and dissolved the injunction; and its decree is here assigned as error.

JOHN GINDRAT WINTER, for appellants.—(1.) The equity of the bill can not be doubted. On the facts alleged, the relation between the parties was substantially the same as between mortgagee and mortgagor, and their rights and remedies are the same.—*Relfe v. Relfe*, 34 Ala. 505; *Bizzell v. Nix*, 60 Ala. 281; *Chapman v. Lee*, 64 Ala. 483; *Bankhead v. Owen*, 60 Ala. 466; *Hooper v. Railroad Co.*, 69 Ala. 538. As between mortgagor and mortgagee, a clear case of waste is shown, which a court of equity will restrain by injunction. 2 Dan. Ch. Pl. & Pr. 1630; *Kane v. Vanderburgh*, 1 Johns. Ch. 11; *Sullivan v. Rabb*, 86 Ala. 433; *Hammond v. Winchester*, 82 Ala. 470; *McDaniel v. Callan*, 75 Ala. 327; *Nininger v. Norwood*, 72 Ala. 277; *Malone & Foote v. Marriott*, 64 Ala. 486; *Coleman v. Smith*, 55 Ala. 368; *Fairbanks v. Cudworth*, 33 Wisc. 358; 10 Amer. & Eng. Encyc. Law, 817, notes. (2.) On motion to dissolve an injunction, only matters of substance in the bill are considered, and amendable defects are disregarded.—*Chambers v. Ala. Iron Co.*, 67 Ala. 353; 3 Brick. Digest, 352, §§ 298-9. The averments of the answer are considered, only so far as they are responsive, direct and responsive.—*Weems v. Weems*, 73 Ala. 462; *Jones v. Ewing*, 56 Ala. 360; 1 Brick. Digest, 677, § 548; 3 *Ib*. 352, § 303; 2 Dan. Ch. Pl. & Pr. 1678, note. The equity of the bill is not met and destroyed by the answer.

E. P. MORRISSETT, *contra*.—1. The equitable doctrine is not denied, that the unpaid vendor may enjoin the waste of his security. But an injunction is granted, before a hearing on the merits, only in cases of urgent necessity, where irreparable injury will result from delay; and only upon the averment of facts which constitute the alleged injury. 2 Dan. Ch. Pl. & Pr. 1629; 9 Pick. 376; High, Inj. § 421; *Bibb v. Shackelford*, 38 Ala. 614. There must be a strong and mischievous case of pressing necessity.—7 Porter, 238. Here, the complainant bought 160 acres of land, on time. It was mostly woodland, only about twenty acres being in cultivation. He went into possession, and began clearing the woodland, and reducing it to cultivation; and, instead of

[Moses Brothers v. Johnson.]

burning the fallen timber, he sold it. The bill seeks to enjoin and restrain this, alleging that the timber is of great value, and that cutting and removing it would impair the vendor's security, and result in irreparable injury, as the land, with the timber on it, was not worth more than the debt due to the complainant, and the purchaser was insolvent. There is no averment of abuse, or misuse, nor that it was not in the contemplation of the vendor that the land was to be cleared.—*McDaniel v. Callan*, 75 Ala. 330. The sale of property conveys to the purchaser the right to its legitimate enjoyment. If equity will interfere on the allegations of this bill, it will interfere to prevent the enjoyment of any property bought on a credit, where the purchaser has no independent security to offer, and the use of the property impairs its value. The laborer may have his mule, bought on credit, stopped in the furrow; and the immigrant, buying a homestead in the woods, may be prevented from felling a single tree, if the timber is of any value. The vendor may always protect himself by an express stipulation.

2. But the answer completely destroys the equity of the bill, denying all the averments on which its supposed equity rests; and it is under oath. The defendant denies that he is impairing complainant's security by felling the timber, and, in verification of his denial, avers that the land is very fertile, and suitable for cultivation, but of little value while the timber stood on it; that the timber was valueless, except when felled and sold; that he was clearing the land, and putting it in cultivation, for a farm and home for his family; and that it is much more valuable in cultivation, than in a wild state. He also denies his insolvency, and avers that he can easily meet and pay his notes for the purchase-money. The injunction was properly dissolved on the denials of the answer.—3 Brick. Digest, 342, § 303.

STONE, C. J.—The appellants, who were the complainants, sold one hundred and sixty acres of land to the defendant, at the agreed price of fourteen hundred and forty dollars—nine dollars per acre. Only five dollars of the purchase-money was paid. The balance, including interest, was agreed to be paid in annual installments, running through about five years from the date of the purchase, January 5, 1889. Complainants retained the title, giving to Johnson, the purchaser, their obligation to make him title on payment by him of the purchase-money, and accruing taxes. The

[Moses Brothers v. Johnson ]

agreement stipulated further, that if Johnson failed "to pay any of said installments when due," then Moses Brothers "have the right to annul this agreement, and take possession of the premises, and to retain out of the moneys paid under this agreement [by Johnson] sixty dollars *per annum* as rent of the premises, said amount being hereby agreed and declared by said parties to be the annual rental value of the premises; returning the surplus, if any, to" Johnson.

What we have copied contains every stipulation in the agreement, which sheds any light on Johnson's rights acquired under the purchase. Nothing is said about felling timber, or clearing lands, or of Johnson's right to take and hold possession, farther than is implied in the language copied above. Johnson did take possession immediately after the agreement was executed, and was in possession when this bill was filed, August 26, 1889. No part of the debt for the purchase-money had then matured, and there then remained unpaid about fourteen hundred dollars.

Under our interpretation of the agreement, Johnson had the clear right to enter into possession of the land, and to remain in possession until he made default in the payment of some installment of the purchase-money. On such default, Moses Brothers had the option, secured by the contract, to put an end to the agreement, so far as it evidenced a sale, to convert Johnson's holding into a tenancy *ab initio*, and to retake possession of the land. This is a right of election reserved for their benefit, and they alone can exercise it. *Collins v. Whigham*, 58 Ala. 438; *Wilkinson v. Roper*, 74 Ala. 140.

When a vendor of real estate enters into an executory agreement to convey title on the payment of the purchase-money, he sustains, in substance, the same relation to the vendee, as a mortgagee does to a mortgagor. Each has a legal title, which, in the absence of stipulations for possession, will maintain an action of ejectment. Each can retain his legal title against the other party, until the purchase-money, or mortgage debt, is paid, unless he permits the other to remain in undisturbed possession for twenty years. And yet each is at last but a trustee of the legal title for the mortgagee or vendee, if the purchase-money, or mortgage debt, as the case may be, is paid, or seasonably tendered. The same mutual rights and remedies, legal and equitable, and the same limitation to the right of recovery, obtain in the one relation and in the other.—*Relfe v. Relfe*, 34 Ala.

[Moses Brothers v. Johnson.]

500; *Bizzell v. Nix*, 60 Ala. 281; *Chapman v. Lee*, 64 Ala. 483; *Sweeney v. Bixler*, 69 Ala. 539.

We have found but a single case precisely like the present one in its facts. In *Scott v. Wharton*, 2 Hen. & Munf. 25, a sale of land had been made on a credit, and title retained by the vendor. The vendee went into possession, and a bill was filed by the vendor, charging him with committing waste by cutting timber, and praying for an injunction. The court treated the case precisely as if it had been a bill by mortgagee against mortgagor, to restrain him from lessening the security by felling and removing the timber.—*Fairbank v. Cudworth*, 33 Wis. 358.

We feel safe in holding, that a vendor who sells on credit, retaining the title as security for the purchase-money, sustains the same relation to the vendee, so far as the question of security is concerned, as does the mortgagee to the mortgagor.

In *King v. Smith*, 2 Hare, 239—24 Eng. Ch. Rep.—it was said to be an established rule, "that if the security of the mortgagee is insufficient, and the court is satisfied of that fact, the mortgagor will not be allowed to do that which would directly impair the security—cut timber upon the mortgaged premises. . . . The cases decide, that a mortgagee out of possession is not, of course, entitled to an injunction to restrain the mortgagor from cutting timber on the mortgaged property. If the security is sufficient, the court will not grant an injunction merely because the mortgagor cuts, or threatens to cut timber. There must be a special case made out before the court will interfere. The difficulty is in determining what is meant by a 'sufficient security.' Suppose the mortgage debt, with all the expenses, to be £1,000, and the property to be worth £1,000, that is, in one sense, a sufficient security; but no mortgagee, who is well advised, would lend his money, unless the mortgaged property was worth one-third more than the amount lent at the time of the mortgage." This was considered the rule, and the only safe rule, under English values. In that country, land values were, in a measure, stationary. In this, they are fluctuating. To be a "sufficient security," with us, there should be a much broader margin between the amount of the debt and the estimated value of the property mortgaged for its security, than is considered sufficient in that older country.

This court is fully committed to the same doctrine. In

*Coker v. Whitlock*, 64 Ala. 180, this court ruled, that when the mortgagor is commiting waste which impairs the security, or renders it insufficient, chancery, at the suit. of the mortgagee, will restrain him by injunction.—*Coleman v. Smith*, 55 Ala. 368; *Hammond v. Winchester*, 82 Ala. 470; *Sullivan v. Rabb*, 86 Ala. 433; also, 2 Dan. Ch. Prac. *1629, n. 3; *Usborne v. Usborne*, 1 Dickens, 75; *Brady v. Waldron*, 2 John Ch. 148; *Robinson v. Preswick*, 3 Ed. Ch. 246; *Murdock's Case*, 2 Bland, 461; *Downing v. Palmeteer*, 1 Mon. 64.

The bill charges, and the answer admits, that the land, which is the subject of this suit, is in value not exceeding the sum of the purchase-money that remains unpaid. The bill also charges that the defendant is insolvent. To this charge the answer interposes a general denial, but accompanies it with a statement, as follows: "This defendant denies that he is insolvent, and avers that he is solvent; that, except the debt he owes for this land, his liabilities are small, and that he owns real estate in his own name, not subject to exemption as a homestead, in Montgomery county, Alabama, that is worth much more than any liabilities or debts he owes, excepting his debt for this land." We understand this language to mean, that defendant's other property will pay his other debts; but we can not interpret it as affirming that it will pay any certain sum above his other debts. This leaves the land in controversy as the sole security for its promised purchase-money. The bill also charges, that the land lies near the city of Montgomery, where fire-wood is in demand, and commands ready sale; and that to denude the land of its timber, would greatly diminish its value as a security. The answer admits the truth of each of these averments, except the last, which it denies. It sets up that the land is fertile, and would be made more valuable, if cleared of its timber, and brought under cultivation. This last averment must be treated as affirmative, defensive matter, the proof of which rests with defendant. Such averment, until proved, furnishes no ground for dissolving the injunction. 1 Brick. Dig. 678, §§ 567-8.

It may be, as contended, that the right to clear the land, sell the timber, and put the land in cultivation, were inducements—controlling inducements—to enter into the purchase. They were not expressed as terms of the contract, and defendant failed to stipulate for any such privilege. Considering the proximity of the land to a market for the fire-

[Davis & Son v Milligan.]

wood—an averment not denied, but admitted—we feel forced to presume, as charged in the bill, that the land is more valuable with the timber on it, than if cleared and put in cultivation. Hence, we hold, that the averment to the effect that the value of the land would be enhanced by clearing it, is affirmative matter, the burden of proving which is on the defendant. We may state here, that injunction is the only relief prayed, and is the only proper relief in a case like the present one.

However it may be made to appear by proof, the pleadings do not make a case for a dissolution of the injunction; and the decretal order dissolving the injunction must be reversed, and the injunction reinstated.

Reversed and rendered.

